Kristine M. Akland
Center for Biological Diversity
P.O. Box 7274
Missoula, MT  59807
(406) 544-9863
kakland@biologicaldiversity.org

Andrea Zaccardi (*pro hac vice pending*)
Center for Biological Diversity
P.O. Box 469
Victor, ID  83455
(303) 854-7748
azaccardi@biologicaldiversity.org

Nicholas Arrivo (*pro hac vice pending*)
The Humane Society of the United States
1255 23rd St NW, Suite 450
Washington, DC 20037
(202) 961-9446
narrivo@humanesociety.org

*Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, THE HUMANE SOCIETY OF THE UNITED STATES, HUMANE SOCIETY LEGISLATIVE FUND, and SIERRA CLUB,<br><br>        Plaintiffs,<br><br>vs.<br><br>U.S. DEPARTMENT OF THE INTERIOR; DEB HAALAND, in her official capacity as Secretary of the United States Department of the Interior;<br><br>        and | Civil No. _____<br><br><br><br><br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

| U.S. FISH AND WILDLIFE SERVICE; MARTHA WILLIAMS, in her official capacity as Director of the U.S. Fish and Wildlife Service,<br><br>    Defendants. | |

## INTRODUCTION

1.      Plaintiffs Center for Biological Diversity, the Humane Society of the United States, Humane Society Legislative Fund, and Sierra Club (collectively "Plaintiffs") bring this action under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544, to challenge the U.S. Fish and Wildlife Service's ("FWS") failure to make a mandatory finding on whether a species warrants designation as "threatened" or "endangered" under the ESA. 16 U.S.C. § 1533(b)(3)(B). The species at issue is the gray wolf (*Canis lupus*) and, more specifically, gray wolves living in the northern Rocky Mountains.

2.      During the 19th and early 20th centuries, gray wolves in the United States were driven to the brink of extinction by human persecution. Scientists estimate that as many as 2 million wolves lived in North America before European colonization. But, by the 1970s, they had been reduced to fewer than 1,000 wolves in northeastern Minnesota, with a small isolated population on Isle Royale.

3.      In an effort to reverse this eradication of wolves, FWS reintroduced gray wolves into Yellowstone National Park and central Idaho during the 1990s. These efforts were successful—wolf populations in the northern Rocky Mountains

grew, although the species is still absent from much of its historical range in the United States. Still, the reintroduction of wolves in the northern Rocky Mountains represents a great success story in our country's efforts to prevent the disappearance of this iconic species from the American landscape.

4.      However, recent changes in Idaho and Montana's wolf hunting and trapping regulations threaten to eliminate these recovery gains. Wolves in the northern Rocky Mountains are not currently protected under the ESA, and they face substantial and intensifying threats. Montana and Idaho recently passed legislation aimed at drastically reducing the wolf populations in their states. These laws allow for the use of new – and highly effective – methods to kill wolves, increase the number of wolves allowed to be killed, and lengthen wolf trapping seasons.

5.      To ensure recovery gains for gray wolves are not lost, on May 26, 2021, Plaintiffs submitted a formal petition to Defendants, requesting that FWS list a distinct population segment ("DPS") of the species, including wolves in the northern Rocky Mountains, as "endangered" or "threatened" pursuant to the ESA. This petition was received by Defendants on June 1, 2021.

6.      The ESA requires that FWS, upon receiving a citizen petition to list a species, make an initial finding within 90 days regarding whether or not the petitioned action "may be warranted" ("90-day finding"). 16 U.S.C. §

1533(b)(3)(A).

7.      On September 17, 2021, FWS made a positive 90-day finding on both Plaintiffs' petition and a second petition filed by a separate coalition of conservation groups. In the 90-day finding, FWS found that the petitions presented "credible and substantial information that human caused mortality . . . may be a potential threat to the species in Idaho and Montana" and that "new regulations in these two States may be inadequate to address this potential threat." 86 Fed. Reg. 51,857 51,859 (Sept. 17, 2021).

8.      If FWS issues a positive 90-day finding – as it has done for Plaintiffs' petition – the ESA requires that the Service determine whether listing "*is warranted*" within 12 months of receiving the petition ("12-month finding"). 16 U.S.C. § 1533(b)(3)(B) (emphasis added). Though that deadline passed on June 1, 2022, FWS has to date not issued a 12-month finding on Plaintiffs' petition. Consequently, Defendants are in violation of the ESA.  *Id.*

9.      To remedy this violation, Plaintiffs seek an order declaring that Defendants are in violation of the ESA and directing Defendants to make, by a Court-ordered deadline, the overdue determination of whether federal protection is warranted under the ESA for a gray wolf DPS including the northern Rocky Mountains. Enforcement of the nondiscretionary deadlines of the ESA is necessary to ensure the survival and recovery of this iconic species in the wild.

JURISDICTION

10.     This Court has jurisdiction over this action pursuant to 16 U.S.C. §§ 1540(c) and (g)(1)(C) (action arising under the ESA's citizen suit provision), and 28 U.S.C. § 1331 (federal question jurisdiction).

11.     The Court may grant the requested relief under the ESA, 16 U.S.C. § 1540(g) and 28 U.S.C. §§ 2201 and 2202 (declaratory and injunctive relief).

12.     By letter dated June 3, 2022, the Plaintiffs provided 60 days' notice of their intent to file this suit pursuant to the citizen-suit provision of the ESA, 16 U.S.C. § 1540(g)(2)(C).

13.     Defendants have not remedied the violations to date, and thus an actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201.

VENUE

14.     The U.S. District Court for the District of Montana is the proper venue for this action pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e). Defendants' violations of law occurred in this district and a substantial part of the events giving rise to Plaintiffs' claim occurred in this district.

PARTIES

15.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("the Center") is a nonprofit organization that works through science, law, and creative media to

5

secure a future for all species, great or small, hovering on the brink of extinction.
The Center has more than 89,000 members. The Center and its members have
interests in the conservation of endangered and threatened species – including the
gray wolf – and with the effective implementation of the ESA. The Center has
worked to protect and preserve the gray wolf for almost two decades, since the first
attempt to strip wolves of Endangered Species Act protection in 2003. Through
lawsuits, policy work, advocacy, member and supporter outreach, and public
education, the Center has and will continue to seek protections that allow gray
wolves to recover and thrive.

16.     Plaintiff THE HUMANE SOCIETY OF THE UNITED STATES
("HSUS") is a non-profit organization incorporated in 1954 and headquartered in
Washington, D.C. HSUS is the nation's largest animal protection organization,
with millions of members and constituents. HSUS' mission is to fight to end
suffering for all animals. In furtherance of this mission, and on behalf of its
members and constituents who are personally vested in ensuring the continued
survival of some of the world's most iconic imperiled species, HSUS has worked
for many years to improve the plight of the gray wolf. HSUS has, for example,
helped to thwart continuous efforts to delist the gray wolf including successfully
challenging the recent federal delisting decision in court. HSUS also works at the
state level to strengthen laws and regulations and gain further protections for gray

wolves and advocates vocally against wolf hunting.

17.     Plaintiff HUMANE SOCIETY LEGISLATIVE FUND ("HSLF") is

an animal protection organization incorporated under section 501(c)(4) of the

Internal Revenue Code and operates as a separate affiliate of HSUS. HSLF was

formed in 2004 and is based in Washington, D.C. HSLF's mission is to ensure that

animals have a voice before federal and state lawmakers by advocating for

measures to eliminate animal cruelty and suffering; educating administrative and

elected officials, as well as the public, about animal protection issues; and

supporting humane candidates for office. HSLF has a long history of advocating

for the protection of wildlife – especially threatened and endangered species and

native carnivores – in Congress and before federal agencies. More specifically,

HSLF has spent considerable time fighting against the delisting of the gray wolf

under the ESA in Congress as well as thwarting other attacks against gray wolf

protections at the federal level.

18.     Plaintiff SIERRA CLUB is a national nonprofit organization with

over 66 chapters and approximately 800,0000 members dedicated to exploring,

enjoying, and protecting the wild places of the earth; to practicing and promoting

the responsible use of the earth's ecosystems and resources; to educating and

enlisting humanity to protect and restore the quality of the natural and human

environment; and to using all lawful means to carry out these objectives. The

Sierra Club has worked for many years in the northern Rocky Mountains on state-level wolf restoration efforts, legislation that provides wolves with protection from human hunting, trapping and poisoning, and implementation of wolf-livestock coexistence strategies. The Montana Chapter of the Sierra Club has approximately 3,000 members and the Idaho Chapter has approximately 3,700 members.

19.    Plaintiff organizations have members and supporters who visit the areas in the northern Rocky Mountains where gray wolves occur. These individuals use these areas for observation of the species and other wildlife; research; nature photography; aesthetic enjoyment; and other recreational and educational activities. Individual members of Plaintiff organizations have professional, spiritual, recreational, and economic interests in gray wolves in the northern Rocky Mountains and their habitat in the region. These members have visited and have plans to continue to travel to and recreate in areas where they can observe this species in the northern Rocky Mountains region, and they will maintain an interest in the gray wolf and its habitat in this region in the future.

20.    For example, Center member and Government Affairs Director Brett Hartl has lived, worked and taken numerous trips to the northern Rocky Mountains over the last twenty years to view and photograph gray wolves in the wild. On his most recent visit in May 2021, he was able to watch and photograph several wolf packs in Yellowstone National Park's Lamar Valley. Mr. Hartl also traveled to

Montana and Wyoming in July 2020 to photograph wolves. Mr. Hartl plans to return to the northern Rocky Mountains in the summer of 2023 and hopes to view and photograph wolves again. The new legislation passed by Idaho and Montana allowing widespread persecution of wolves injures Mr. Hartl and negatively impacts his opportunity to view wolves in the wild in the future because fewer wolves in the northern Rocky Mountains makes viewing and photographing wolves much more difficult. Mr. Hartl also has a professional interest in seeing the survival and recovery of gray wolves in the northern Rocky Mountains. FWS's failure to comply with the ESA's statutory deadline to make a timely determination as to whether listing gray wolves under the ESA is warranted deprives gray wolves in the northern Rocky Mountains of the federal protection that could alleviate Mr. Hartl's harm.

21.     In addition, HSUS has individual members, including Colorado resident Wendy Keefover, who has visited, studied, worked, and recreated on lands that are home to gray wolves in the northern Rocky Mountains, and have specific intentions to do so frequently and on an ongoing basis. Ms. Keefover has a longstanding interest in native carnivores and has been working to protect cougars (*Puma concolor*), gray wolves (*Canis lupus*), and grizzly bears (*Ursus arctos horribilis*) for many years. For three decades, Ms. Keefover has visited gray wolf habitat in and around Yellowstone National Park to view and photograph native

wildlife, including gray wolves, on an annual basis, and will continue these yearly

trips as long as her health allows.

22.     By way of another example, Phil Knight has been a Sierra Club

member and active volunteer since 2002. He is a 38-year resident of the Greater

Yellowstone Ecosystem wit a lifelong interest in wildlife study and wildlife

conservation. He was involved in advocating for reintroduction of wolves to

Greater Yellowstone and the northern Rockies as early as 1988 and testified in

federal hearings to that effect. Since 1999 Mr. Knight has worked as a tour guide in

Yellowstone National Park with an emphasis on wildlife spotting and observation.

He has spent countless hours in the field observing gray wolves, learning about

them and teaching his clients about wolves. Mr. Knight has explored and recreated

on public lands all over the northern Rockies with his wife and family. He also has

spoken out and testified recently regarding predator hunting practices and policies

in Montana and Wyoming, including testifying before the Montana Fish and

Wildlife Commission about Montana's 2021 wolf hunting laws. Mr. Knight

partially depends on the presence of wolves for his livelihood and works closely

with other tour guides and conservationists around the region to demonstrate the

value of wild wolves to the economy and the ecology of the northern Rocky

Mountains.

23.     Plaintiffs' conservation efforts are prompted by their concern that the

gray wolf is at imminent risk of extinction in the northern Rocky Mountains. Defendants' failure to comply with the ESA's nondiscretionary deadline for issuing the requisite listing determinations for the gray wolf in the northern Rocky Mountains deprives these animals of statutory protections that are vitally necessary to their survival and recovery. Until gray wolves in the northern Rocky Mountains are protected under the ESA, Plaintiffs' interests in their conservation and recovery are and will continue to be impaired. Therefore, Plaintiffs' members and staff are injured by Defendants' failure to make a timely determination as to whether listing a gray wolf DPS, including wolves in the northern Rocky Mountains, is warranted, and by the ongoing harm to wolves in this region in the absence of substantive legal protections.

24.     The injuries described above are actual, concrete injuries presently suffered by Plaintiffs and their members, and they will continue to occur unless this Court grants relief. These injuries are directly caused by Defendants' inaction, and the relief sought herein – an order compelling a listing determination for the gray wolf in the northern Rocky Mountains – would redress these injuries. Plaintiffs and their members have no other adequate remedy at law.

25.     Defendant U.S. DEPARTMENT OF THE INTERIOR is an agency of the United States charged with administering the ESA for non-marine species, including the gray wolf.

26.     Defendant DEB HAALAND is the Secretary of the United States Department of Interior and the federal official in whom the ESA vests final responsibility for making decisions and promulgating regulations required by and in accordance with the ESA, including listing and critical habitat decisions. Ms. Haaland is sued in her official capacity.

27.     Defendant UNITED STATES FISH AND WILDLIFE SERVICE is the agency within the Department of the Interior that is charged with implementing the ESA for most terrestrial species and promptly complying with the ESA's mandatory listing deadlines.

28.     Defendant MARTHA WILLIAMS is the Director of the U.S. Fish and Wildlife Service and is charged with ensuring that agency decisions comply with the ESA. Ms. Williams is sued in her official capacity.

## LEGAL BACKGROUND

29.     The ESA is a comprehensive federal statute that declares endangered and threatened species of "esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people." 16 U.S.C. § 1531(a)(3). Accordingly, the purpose of the ESA is to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species . . . ." *Id*. § 1531(b).

30.     To this end, section 4 of the ESA requires the Secretaries of the

Departments of Interior and Commerce to protect imperiled species by listing them

as either "endangered" or "threatened." *Id*. § 1533(a). The Secretary of Interior has

delegated administration of the ESA to FWS. 50 C.F.R. § 402.01.

31.     A "species" includes "any subspecies of fish or wildlife or plants, and

any distinct population segment of any species of vertebrate fish or wildlife which

interbreeds when mature." 16 U.S.C. § 1532(16). An "endangered species" is any

species that "is in danger of extinction throughout all or a significant portion of its

range." *Id.* § 1532(6). A "threatened species" is any species that "is likely to

become an endangered species within the foreseeable future throughout all or a

significant portion of its range." *Id.* § 1532(20).

32.     The ESA provides for the listing of DPSs of vertebrate species. FWS

will consider a population a DPS if it is "discrete" in relation to the remainder of

the species to which it belongs and "significant" to the species to which it belongs.

61 Fed. Reg. 4722, 4725 (Feb. 7, 1996).

33.     The ESA's substantive protections apply only after FWS lists a

species as threatened or endangered. For example, section 7 of the ESA requires all

federal agencies to ensure that their actions do not "jeopardize the continued

existence" of any listed species or "result in the destruction or adverse

modification" of a listed species' "critical habitat," 16 U.S.C. § 1536(a)(2), which

consists of areas that are essential to the conservation of the species, *id.* §§ 1532(5)(A), 1533(a)(3)(A). Other provisions of the ESA require the Secretary to (1) "develop and implement" a "recovery plan" for every listed species, (2) authorize the Secretary to acquire land for the protection of listed species, and (3) make federal funds available to states to assist in their efforts to preserve and protect listed species. *Id.* §§ 1533(f), 1534, 1535(d).

34.     Further, endangered species are protected under section 9 of the ESA, which prohibits (among other things), "any person" from engaging in the unlawful "take" of listed species without authorization from the Secretary. *Id.* §§ 1538(a)(1)(B), 1539.

35.     Under section 4(d) of the ESA, the Service must issue regulations to conserve threatened species and may extend to them the statutory protections afforded to endangered species by section 9. *Id.* § 1533(d).

36.     To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process whereby citizens may petition FWS to list species as endangered or threatened. The process includes mandatory, non-discretionary deadlines for findings that FWS must make so that imperiled species receive the ESA's substantive protections in a timely fashion. The three required findings, described below, are the 90-day finding, the 12-month finding, and the final listing determination.

37.     Within 90 days of receiving a listing petition, FWS must "to the

maximum extent practicable," make an initial finding as to whether the petition

"presents substantial scientific or commercial information indicating that the

petitioned action may be warranted." *Id.* § 1533(b)(3)(A). If FWS finds that the

petition does not present "substantial information" indicating that listing "may be

warranted," the petition is rejected, and the process ends. This is known as the 90-

day finding.

38.     However, if FWS determines that a petition presents substantial

information indicating that listing may be warranted, the agency must conduct a

thorough scientific review of the species' status. *Id.* Upon completion of this

"status review," and within 12 months from the date that it receives the petition,

FWS must make one of three findings: (1) listing is "not warranted;" (2) listing is

"warranted;" or (3) listing is "warranted but precluded" by other pending proposals

for listing species, provided certain requirements are met. *Id.* § 1533(b)(3)(B).

This determination is known as the 12-month finding.

39.     If FWS's 12-month finding concludes that listing is warranted, the

agency must publish notice of the proposed regulation to list the species as

endangered or threatened in the Federal Register for public comment. *Id.* §

1533(b)(3)(B)(ii). Within one year of publication of the proposed regulation, the

ESA requires FWS to render its final determination on the proposal. *Id.* §

1533(b)(6)(A). At such time, FWS must either list the species; withdraw the

proposed listing rule; or, if there is substantial disagreement about scientific data,

delay a final determination for up to six months to gather more scientific

information. *Id.* §§ 1533(b)(6)(A)(i), and (B)(i). This is known as the final listing

determination.

40.    The ESA's substantive protections cannot safeguard a species facing

extinction until the species is formally listed as endangered or threatened.

Therefore, it is critical that FWS meticulously follow the ESA's listing procedures

and deadlines so that species are protected in a timely manner and early enough to

stem and reverse their trend toward extinction.

41.    Defendants have regularly ignored these statutory procedures and

missed statutory listing deadlines, including with respect to Plaintiffs' petition and

leading to the present litigation, which is brought pursuant to the ESA's citizen-suit

provision to ensure that the purposes of the ESA are met. 16 U.S.C. §

1540(g)(1)(C).

FACTUAL BACKGROUND

Gray Wolves

42.    The gray wolf is an iconic creature: majestic, intelligent, and highly

social. Studies have shown that gray wolves are crucial in driving evolution and

balancing ecosystems. Gray wolves are a fiercely territorial animals that live in

tightly knit packs. They are found in the southern and northern Rocky Mountains, the West, the Midwest and the Northeast of the United States, but in numbers drastically lower than their historical populations.

43.     Two million gray wolves used to roam freely throughout North America, but a federal extermination program completely decimated their numbers. Prior to gaining protection under the Endangered Species Act in 1974, the gray wolf had been all but eliminated from the United States except for in a small part of Minnesota and Michigan's Isle Royale National Park.

44.     After receiving protection under the ESA, wolves made a substantial recovery in the western Great Lakes. After reintroduction to Yellowstone National Park and central Idaho, they began establishing a population in the northern Rockies as well as the western states. Despite these victories, gray wolves only inhabit 10% of their historic range and have a long way to go before reaching full recovery. Severe persecution of gray wolves continues across the United States, threatening their ability to recover. Currently, human-caused mortality of gray wolves in the northern Rocky Mountains poses the gravest threat to the species' survival and recovery.

45.     Wolves in the northern Rockies are not currently protected under the ESA, and attacks against gray wolf recovery by way of state legislation and rulemaking in this region have increased substantially in recent years. These

changes threaten the population by substantially increasing the number of wolves allowed to be killed, the mechanisms used to do so and greatly expanding the time periods when hunting and trapping is permitted.

46.     For example, Idaho now permits: (1) year-round trapping on private property; (2) unlimited purchase of wolf tags (meaning a single hunter can kill an unlimited number of wolves); and (3) baiting, hound hunting, night hunting with night vision equipment, and the use of all-terrain vehicles and snowmobiles to facilitate killing wolves. With these mechanisms in place, the legislature has approved killing up to 90% of the state's estimated wolf population.

47.     Further, recent statutory and regulatory changes in Montana (1) allow the use of strangulation snares and baiting on public and private lands, and night hunting on private lands; (2) allow the killing of up to 20 wolves per person per year; (3) expand the wolf trapping season by four weeks; and (4) eliminate wolf harvest quotas surrounding Yellowstone and Glacier National Parks. These new laws allow the removal of 85% of the state's estimated wolf population.

Listing Petition and Response

48.     On February 10, 2022, the District Court for the Northern District of California vacated FWS's Final Rule delisting wolves throughout the contiguous United States. *Defs. of Wildlife v. U.S. Fish & Wildlife Serv.*, No. 21-cv-00344-JSW, 2022 U.S. Dist. LEXIS 30123 (N.D. Cal. Feb. 10, 2022). As a result, ESA

protections have been restored to gray wolves in "all or portions of the 44 lower United States." *Id.* However, wolves in the northern Rocky Mountains remain unprotected by the ESA, notwithstanding the threats they face throughout this region.

49.    Plaintiffs submitted a petition, received by FWS on June 1, 2021, requesting one of two alternative DPS designations for the gray wolf in the northern Rocky Mountains: (1) a "Northern Rocky Mountains DPS", or (2) a "Western DPS." The petition requested FWS to assign the status of either threatened or endangered to one of these two DPSs due to the ongoing threats to the population's existence.

50.    FWS issued a 90-day finding on Plaintiffs' petition on September 17, 2021. The 90-day finding concluded that "the petitioners present credible and substantial information that human caused mortality . . . may be a potential threat to the species in Idaho and Montana" and that "new regulations in these two States may be inadequate to address this potential threat." 86 Fed. Reg. at 51,859.

51.    FWS was required to make a 12-month finding as to whether listing the Northern Rocky Mountains or Western DPS of gray wolf as endangered or threatened is warranted by June 1, 2022, but has not made this mandatory finding to date, in violation of the ESA. 16 U.S.C. § 1533(b)(3)(B).

CLAIM FOR RELIEF

Violation of the ESA: Failure to Make a Timely 12-Month Finding for the
Northern Rocky Mountains or Western DPS of Gray Wolves

34.    Plaintiff hereby incorporates all preceding paragraphs by reference.

35.    Defendants' failure to make a timely 12-month finding on Plaintiffs'
petition to list the Northern Rocky Mountains or Western DPS of gray wolf as an
endangered or threatened species violates the ESA, 16 U.S.C. § 1533(b)(3)(B).

REQUEST FOR RELIEF

Plaintiffs respectfully request that the Court enter Judgment for Plaintiffs
providing the following relief:

A.    Declare that Defendants violated the ESA by failing to issue a timely
12-month finding on Plaintiffs' petition to list the Northern Rocky Mountains or
Western DPS of the gray wolf;

B.    Order Defendants to issue, by a date certain, a finding as to whether
listing the Northern Rocky Mountains or Western DPS of the gray wolf is
warranted, 16 U.S.C. § 1533(b)(3)(B);

C.    Award Plaintiffs attorneys' fees and costs in this action as provided by
the ESA, 16 U.S.C. § 1540(g)(4), and/or the Equal Access to Justice Act, 28
U.S.C. § 2412; and

D.    Provide such other relief as the Court deems just and proper.

Dated: August 9, 2022

Respectfully submitted,

*/s/ Kristine M. Akland*
Kristine M. Akland
Center for Biological Diversity
P.O. Box 7274
Missoula, MT  59807
(406) 544-9863
kakland@biologicaldiversity.org

Andrea Zaccardi
Center for Biological Diversity
P.O. Box 469
Victor, ID  83455
(303) 854-7748
azaccardi@biologicaldiversity.org

Nicholas Arrivo
The Humane Society of the United States
1255 23rd St NW, Suite 450
Washington, DC 20037
(202) 961-9446
narrivo@humanesociety.org

*Counsel for Plaintiffs*